UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C L O S E D

ROBERT BERNARD RAMSEY, #366023,

        Petitioner,

v.                                        CASE NO. 07-13563
                                           HONORABLE ANNA DIGGS TAYLOR

MARY BERGHUIS,

        Respondent.
_____/

**OPINION AND ORDER GRANTING PETITIONER'S
MOTION TO SUPPLEMENT HIS HABEAS PETITION,
DENYING THE HABEAS PETITION,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Robert Bernard Ramsey has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Also pending before the Court is Petitioner's motion to supplement his habeas petition with an excerpt from the transcript of trial and a copy of a motion to remand that Petitioner filed in state court. The motion to supplement [Dkt. #13] is **GRANTED**, but because Petitioner's habeas claims do not warrant relief, the habeas petition will be denied. A procedural history and discussion follow.

### I. Background

Petitioner was charged in Wayne County, Michigan with first-degree (premeditated) murder and possession of a firearm during the commission of a felony (felony firearm). The charges arose from the fatal shooting of Keith Journey in a Detroit apartment building on March 9, 2004. The facts have been summarized by the state court as follows:

    [D]efendant and codefendant [Larry] Jackson both appeared at an apartment

>where marijuana was sold. Defendant was armed with a handgun and Jackson was armed with a high-powered assault rifle, that was powerful enough to penetrate the walls of the apartment. After the unarmed victim opened the front door, Brenda Mims saw Jackson's gun and ran to the bedroom. Before she reached the bedroom, several shots rang out. Bullets came through the walls into the bedroom. Defendant appeared at the bedroom door, but another occupant, Derrick Steele, had grabbed a gun from under the bed and fired at defendant. Defendant was shot at least twice and ran away. The victim was shot seven times, including twice in the chest.

*People v. Ramsey*, No. 266371, 2007 WL 1138487, at *3 (Mich. Ct. App. Apr. 17, 2007).

The prosecutor's theory was that Larry Jackson shot Mr. Journey and that Petitioner aided and abetted Jackson. Neither defendant testified or presented any witnesses. Their defense was that the witnesses to the incident were not credible. Petitioner's attorney also attempted to show that Derrick Steele may have accidentally shot Mr. Journey and that the police charged the wrong people.

On September 1, 2004, a Wayne County Circuit Court jury found Petitioner guilty, as charged, of first-degree murder, Mich. Comp. Laws § 750.316(1)(a), and felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of life imprisonment for the murder.

Petitioner raised his habeas claims in an appeal of right and successfully moved to remand his case for an evidentiary hearing on a claim of ineffective assistance of counsel. On remand, the trial court conducted an evidentiary hearing and concluded that Petitioner was not deprived of effective assistance of counsel. The Michigan Court of Appeals subsequently affirmed Petitioner's convictions in an unpublished decision, and on July 30, 2007, the Michigan Supreme Court denied leave to appeal. *See People v. Ramsey*, 479 Mich. 868; 735 N.W.2d 234 (2007).

Petitioner filed his habeas corpus petition on August 24, 2007. The petition alleges that: (1) the trial judge reversibly erred by refusing to give a missing-witness instruction; (2) defense counsel provided ineffective assistance of counsel by failing to (a) sufficiently investigate and prepare for trial, (b) move for a severance, (c) allow Petitioner to testify, and (d) object to the prosecutor's damaging statements; (3) the jury instruction on criminal intent was improper, trial counsel was ineffective for not objecting, and there was insufficient evidence to sustain the jury's verdict; and (4) the trial court abused its discretion when denying Petitioner's motion for new trial.

Respondent argues in an answer to the habeas petition that Petitioner's first claim is not cognizable on habeas review and that Petitioner's remaining claims lack merit. Petitioner concedes in a reply to Respondent's answer that he did not raise his first claim as a federal constitutional issue. He has voluntarily dismissed that claim. The Court will proceed to address Petitioner's remaining claims, using the following standard of review.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted).

### III. Discussion

#### A. Trial Counsel

Petitioner alleges that his trial attorney provided ineffective assistance by failing to sufficiently investigate and prepare for trial, by failing to sever Petitioner's trial from his co-defendant's trial, by refusing to put him on the stand, and by failing to object to the prosecutor's damaging mis-statements. The Michigan Court of Appeals rejected all these claims and

concluded that Petitioner was not deprived of effective assistance of counsel.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness" and if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687-88. The prejudice prong of *Strickland* requires Petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Unless a defendant makes both showings [deficient performance and prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

In a federal habeas action, judicial scrutiny of defense counsel's conduct is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (*per curiam*). A habeas petitioner must establish a violation of *Strickland's* two-pronged test and show that the state applied *Strickland* to the facts in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

### 1. Alleged Failure to Investigate and Prepare

Petitioner alleges that his attorney failed to sufficiently investigate the case and was unprepared for trial. The bases for this claim are defense counsel's failure to have Petitioner

testify and his comment that he did not need to know Petitioner's version of the facts. Petitioner asserts that his attorney proceeded with a defense that had no basis in law or in fact and that, if his attorney had conducted a proper investigation, he would have realized that Derrick Steele's version of the facts was not credible. The Michigan Court of Appeals found no support in the record for Petitioner's claim that his attorney's investigation was inadequate.

"[I]n the context of asking whether counsel adequately investigated his client's defense, the ultimate inquiry is whether the choice not to conduct additional investigation was 'reasonable[ ] in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 691). The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, __ U.S. __, __, 129 S.Ct. 1411, 1420 (2009).

Petitioner's trial attorney tried to show that there was reasonable doubt, that Derrick Steele may have shot Keith Journey, that Petitioner was the real victim, and that the police charged the wrong people. This was a reasonable defense strategy because witnesses to the crimes denied seeing the actual shooting. In addition, Derrick Steele testified at the preliminary examination that he did not know at the time of the shooting whether he may have accidentally shot Mr. Journey. And Steele admitted at trial that he had fired several gunshots at Petitioner.

Petitioner claims that he would have testified that he went to the apartment to talk with Derrick Steele and to smoke marijuana. Defense counsel, however, testified at the post-conviction evidentiary hearing that there would have been problems with Petitioner's explanation of what happened. This was an objectively reasonable assessment of the case,

because the evidence adduced at trial indicated that Larry Jackson fired a rifle almost immediately after the door to the apartment was opened and that Jackson preceded Petitioner into the apartment. Petitioner subsequently was observed with a gun in his hand.

Petitioner's version of the facts did not have a realistic chance of success. Thus, defense counsel's choice not to conduct additional investigation was reasonable under the circumstances. The contention that defense counsel was unprepared and failed to adequately investigate the case is not supported by the record.

### 2. Failure to Move for Separate Trials

Petitioner alleges that his attorney should have moved for a separate trial because he (Petitioner) was not involved in the shooting and was merely caught in the middle of crossfire between his co-defendant, Larry Jackson, and Derrick Steele. The Michigan Court of Appeals stated on review of this claim that the record did not support Petitioner's claim that he and Larry Jackson had antagonistic or mutually irreconcilable defenses that would justify severance.

Joint trials generally are favored. *Van v. Jones*, 475 F.3d 292, 314 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 708 (2007); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). In *Zafiro v. United States*, 506 U.S. 534, 539 (1993), the Supreme Court stated that federal district courts should grant a severance under the Federal Rules of Criminal Procedure "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

In Michigan, a trial court must sever a defendant's trial from that of a co-defendant if severance "is necessary to avoid prejudice to substantial rights of the defendant." Mich. Ct. R. 6.121(C).

> Inconsistency of defenses is not enough to mandate severance; rather, the defenses must be 'mutually exclusive' or 'irreconcilable.' Moreover, '[i]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice.' The 'tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other.'

*People v. Hana*, 447 Mich. 325, 349; 524 N.W.2d 682, 692 (1994) (citations omitted).

The defenses in this case were fundamentally the same: eyewitnesses to the crime were not credible because they were disreputable people who had a motive to lie to protect themselves from prosecution. Furthermore, no evidence was admitted that was technically admissible against only Petitioner's co-defendant, and both defendants were equally culpable because a person who intentionally assists someone else in committing a crime is as guilty as the principal. *People v. Mann*, 395 Mich. 472, 476-77; 236 N.W.2d 509, 511 (1975).

In addition, the jurors were instructed to consider each defendant separately. The trial court instructed the jurors that the joint trial was not evidence that the defendants associated with each other or that either one was guilty. (Tr. Aug. 31, 2004, at 117-18.) "Jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration." *Stanford*, 266 F.3d at 459 (6th Cir. 2001) (citing *Francis v. Franklin,* 471 U.S. 307, 324 n. 9 (1985)).

Petitioner claims that he was deprived of an exculpatory defense: that he was caught in the middle of a dispute or cross-fire between co-defendant Larry Jackson and Derrick Steele. This defense lacked substance because there was evidence that Jackson began firing an assault rifle at the door to the apartment and that he preceded Petitioner into the apartment. Derrick Steele, moreover, testified that he fired only at Petitioner, who was armed with a handgun, and that he had not had any prior problems with Jackson.

Petitioner was not deprived of a viable defense by his joint trial, and he has not shown any prejudice resulting from the joint trial. Consequently, defense counsel was not ineffective for failing to move for separate trials.

### 3. Failure to Permit Petitioner to Testify

Petitioner alleges that he wanted to testify and that his testimony would have shed light on what really happened, but his attorney did not permit him to testify. According to Petitioner, he went to the apartment to talk to Derrick Steele and to smoke marijuana, and he had a cell phone, not a gun, in his hand. He would have testified that his co-defendant acted alone. The Michigan Court of Appeals stated on review of this claim that:

> [t]he trial court did not clearly err in finding that defendant chose to follow his attorney's advice and decided not to testify. Defendant has also failed to show that counsel acted unreasonably in advising defendant not to testify, due to credibility issues attendant to defendant's explanation of the facts. Therefore, defense counsel was not ineffective in this regard.

*Ramsey*, 2007 WL 1138487, at *5.

Defendants in criminal cases have a constitutional right to testify, *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987), and any relinquishment of the right to testify must be knowing and intentional, *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). Defense counsel's role is to advise the defendant whether to testify, but the ultimate decision is for the defendant to make. *United States v. Hover*, 293 F.3d 930, 934 (6th Cir. 2002). However,

> when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. *Joelson*, 7 F.3d at 177. This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

*United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (footnote omitted). "When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *Id.*

During Petitioner's trial, defense counsel informed the trial court that he planned to talk to Petitioner about the possibility of testifying. The trial court responded by stating that both defendants had a right to remain silent and the right to get on the stand and tell their stories. (Tr. Aug. 30, 2004, at 236-37.) Nothing more was said about the issue, and at the close of the prosecution's proofs, both defendants rested without testifying.

Petitioner testified at the post-conviction hearing that he had informed his attorney during trial that he wanted to testify. Petitioner admitted, however, that he had not told his attorney what he would say if he did testify. He also admitted that he had known he had a right to testify, that his attorney told him it was his decision to make, and that he did not inform the trial judge that he wanted to testify. (Tr. June 16, 2006, at 5-10.)

Defense counsel testified at the post-conviction hearing that he and Petitioner had discussed the possibility of having Petitioner testify and that he had advised against it because Petitioner would have had to explain why he brought a firearm to the apartment. He left the decision up to Petitioner, who agreed with his advice and said that he was not going to take the stand. (*Id*. at 11-17.) The trial court found defense counsel more credible than Petitioner, and federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

The Court concludes that Petitioner waived his right to testify, and even if he did not waive the right, defense counsel's advice not to have Petitioner testify was reasonable under the circumstances. The shooting allegedly started shortly after Larry Jackson entered the apartment, and Derrick Steele claimed that he subsequently saw Petitioner standing in the doorway to his bedroom, armed with a handgun. Petitioner's version of the facts (that he went to the apartment to talk and smoke marijuana and that Larry Jackson acted alone) would have been problematic.

### 4. Failure to Object to the Prosecutor's Remarks

Petitioner claims that defense counsel was ineffective for failing to object to the prosecutor's statements that Petitioner came into the apartment after the shooting stopped, walked into the bedroom to finish the job, and was taken to the hospital in a private car. The Michigan Court of Appeals concluded that the challenged remarks were reasonable inferences arising from the evidence presented at trial. This Court agrees.

Prosecution witnesses testified that they saw Larry Jackson at the door of the apartment and later in the living room with a long gun. They heard gunshots coming from the door to the apartment shortly after they saw Jackson in the doorway. Casings found inside and outside the apartment were consistent with the assault rifle that Jackson supposedly possessed.

Derrick Steele testified that he saw Larry Jackson in his living room and that it looked like someone else was in the hallway. As Steele went to the bedroom to get a gun, he heard gunshots. He loaded his gun and saw Petitioner standing at the bedroom door with a gun in his hand. He shot at Petitioner four or five times. A police officer testified that Petitioner was admitted to the hospital at approximately the same time as the murder victim, who was taken there by an EMS crew.

One could infer from the evidence that Petitioner followed Larry Jackson into the apartment and then went to the bedroom where most of the occupants of the apartment had gone. One could also infer from the record that Petitioner intended to shoot the people in the bedroom, but abandoned his plan after he was shot and then had someone take him to the hospital in a private vehicle. The Court concludes that the prosecutor made permissible and "reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). Defense counsel, therefore, was not ineffective for failing to object to the prosecutor's remarks.

### 5. Summary

Petitioner has failed to demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. Consequently, the state court's rejection of Petitioner's ineffectiveness claims was objectively reasonable.

### B. The Jury Instructions on Intent; Trial Counsel; Sufficiency of the Evidence

Petitioner alleges next that the jury instruction on criminal intent was improper, that his trial attorney was ineffective for failing to object to the instruction, and that there was insufficient evidence to sustain the jury's verdict. Petitioner has not explained how the jury instruction on intent was improper, and his trial attorney did not object to the instructions as given. The Court therefore considers Petitioner's claim about the jury instruction and the related claim about defense counsel to be abandoned. *See Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003) (deeming a "cause and prejudice" argument abandoned because the habeas petitioner failed to make an argument in support of a finding of "cause and prejudice" for his procedural default).

Petitioner's sufficiency-of-the-evidence claim alleges that there was no evidence of an

intent to kill and no proof that he provided any assistance to his co-defendant. Petitioner further alleges that the key witness against him, Derrick Steele, was not credible because he initially was charged with the murder and had a motive to lie.

### 1. Legal Framework

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical question on review of the sufficiency of evidence supporting a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.

In Michigan, the elements of first-degree, premeditated murder are: (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 254 Mich. App. 142, 151; 656 N.W.2d 835, 841 (2002) (quoting MICH. COMP. LAWS § 750.316(1)(a)).

> [T]he intent to kill may be inferred from any facts in evidence. [*People v.*] *Hoffman*, [225 Mich. App. 103, 111; 570 N.W.2d 146, 150 (1997)]. Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill. [*People v.*] *McRunels*, [237 Mich. App. 168, 181; 603 N.W.2d 95, 102 (1999)].

*People v. Unger*, 278 Mich. App. 210, 223; 749 N.W.2d 272, 286 (2008). When the prosecutor proceeds under an aiding and abetting theory, the prosecutor must show that the defendant

13

intended to commit the crime or knew that the principal intended to commit the crime. *People v. Robinson*, 475 Mich. 1, 6; 715 N.W.2d 44, 47-48 (2006) (quoting *People v. Moore*, 470 Mich. 56, 67-68; 679 N.W.2d 41 (2004)).

### 2. Application

Witnesses to the crime did not see the actual shooting, and two of the three witnesses did not see Petitioner in the apartment. The most incriminating evidence came from Derrick Steele, who testified that he saw both defendants in the apartment and that both men were armed. The shooting began shortly after Larry Jackson was observed at the door to the apartment. Petitioner followed two of the occupants of the apartment to the bedroom where they went for protection. Derrick Steele retreated to the bedroom to get a gun, and he saw Petitioner standing in the doorway of the bedroom as he (Steele) loaded his gun. Although Steele claimed that Petitioner was holding a handgun at his side with the barrel pointed downward, the jury could have inferred from Petitioner's possession of a gun and from his pursuit of the occupants of the apartment to the bedroom that he intended to shoot and kill them.

The Michigan Court of Appeals concluded that the evidence, viewed in the light most favorable to the prosecution, was sufficient to support Petitioner's murder conviction. In reaching this conclusion, the court of appeals noted that both defendants were armed. The court of appeals took notice of

> the nature of the weapon possessed by [co-defendant Larry] Jackson, the short interval between the time the victim opened the apartment door and the time the shooting began, the number of times the victim was shot, that Jackson repeatedly fired through the bedroom walls into the bedroom after [Brenda] Mims ran to the bedroom, and that [Petitioner] also immediately proceeded to the bedroom armed with his gun . . . .

*Ramsey*, 2007 WL 1138487, at *3. The court of appeals inferred that Petitioner and Larry

Jackson "were forced to leave without fully accomplishing their purpose after [Petitioner] was shot by Steele." *Id*.

This Court agrees that a reasonable juror, viewing the evidence in the light most favorable to the prosecution, could have concluded that Petitioner aided and abetted Larry Jackson in killing Keith Journey by accompanying Jackson to the apartment armed with a handgun. The evidence supports the conclusion that the killing was willful, deliberate, and premeditated. Although Petitioner contends that Derrick Steele was not a credible witness, "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted). "[A]ttacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence." *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984) (emphasis in original). Because the evidence was sufficient to sustain the jury's verdict, Petitioner has no right to habeas relief on the basis of his third claim.

### D.  The Evidentiary Hearing

The fourth and final habeas claim challenges the trial court's order denying Petitioner's motion for new trial. Petitioner alleges that the trial court abused its discretion when it found him to be less credible than his trial attorney at the evidentiary hearing.

This Court has "no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court." *Lonberger*, 459 U.S. at 434. Thus, the Court cannot grant habeas relief on the basis of the trial court's assessment of Petitioner's credibility.

Petitioner also contends that the trial court made an erroneous factual finding.  A state court's determination of a factual issue is presumed to be correct unless the habeas petitioner can rebut the presumption with clear and convincing evidence.  *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)).

According to Petitioner, the trial court erroneously concluded that he testified at the evidentiary hearing that he and his attorney had discussed the defense theory.  Petitioner did not specifically say at the hearing that he had discussed the defense theory with his trial attorney.  However, he did say that he had decided not to testify at trial because he thought that doing so would be going against his attorney's strategy. (Tr. June 16, 2006, at 9-10.)  A reasonable inference from this testimony is that Petitioner discussed the defense theory with his attorney and then decided not to testify.  The trial court's factual finding is objectively reasonable.

### IV.  Conclusion

The state appellate court's adjudication of Petitioner's claims did not result in a unreasonable determination of the facts, nor in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Accordingly, the petition for a writ of habeas corpus [Dkt. #1, Aug. 24, 2007] is **DENIED**.

Reasonable jurists could disagree with the Court's resolution of Petitioner's challenge to the sufficiency of the evidence, and the issue "warrant[s] encouragement to proceed further." *Banks v. Dretke*, 540 U.S. 668, 674 (2004).  Accordingly, a certificate of appealability may issue

on Petitioner's claim challenging the sufficiency of the evidence.  The Court declines to grant a certificate of appealability on the remaining issues for the reasons given in the discussion of those claims.  Petitioner may proceed *in forma pauperis* on appeal without further authorization because he was permitted to proceed without prepayment of the filing fee in this Court.  Fed. R. App. P. 24(a)(3).   Finally, as previously noted, Petitioner's motion to supplement his habeas petition [Dkt. #13, Aug. 14, 2009] is **GRANTED**.

DATED: September 30, 2009              s/Anna Diggs Taylor
                                       ANNA DIGGS TAYLOR
                                       UNITED STATES DISTRICT JUDGE

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on September 30, 2009.

Robert Ramsey, #366023
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036              s/Johnetta M. Curry-Williams
                                 Case Manager